UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SAMUEL WALTER STOKES,

Plaintiff,

v.                                                    CAUSE NO.: 3:19-CV-157-RLM-MGG

FLAIRALTY, et al.,

Defendants.

OPINION AND ORDER

Samuel Walter Stokes, a prisoner without a lawyer housed at the Westville Correctional Facility, has filed a lawsuit against Sgt. Flairalty, Sgt. Franklin, Ms. Hart, and Mr. Hart. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

The allegations in the complaint are somewhat confusing.[1] It is clear that Mr. Stokes believes he has been and remains in danger (ECF 1, 4 and 6), but it

---

[1] The complaint appears to have been drafted in segments, and it's not clear that it was docketed in the order that Mr. Stokes intended. Because dates are not always used, the court can't place the events in chronological order.

is less clear why he believes this or why he believes the steps that have been taken to protect him are inadequate. Mr. Stokes alleges that at some time, he was "put out" of his cell by his cellmates. After that, Sgt. Flairalty and Sgt. Franklin interviewed Mr. Stokes in the dayroom in front of his cellmates. Mr. Stokes was immediately labeled as a snitch because he gave information about a shank and about who was responsible for removing him from his cell. Sgt. Franklin ordered Mr. Stokes to return to his cell and not to let his cellmates put him out again. He refused to return to the cell, and was told to remove his clothing except his boxers. He was placed in a holding cell and given an opportunity to fill out a security complaint. Sgt. Franklin told him to say nothing about the shank because "it was beforehand and could not be used." (ECF 1 at 13.) Sgt. Franklin told Mr. Stokes that the lieutenant that reviewed the security request said it wasn't good enough. Mr. Stokes was again told to go back to his cell and not let anyone put him out of his cell. He again refused and sat in the day room for about thirty minutes. An inmate then helped move his belongings into an empty cell. He slept on the bottom bunk. He suffered a hard blow to the head while he slept. The cell was dark, and his complaint doesn't identify an assailant. Mr. Stokes went to dinner and reported the attack to Lt. Palmaroy, who placed Mr. Stokes in a holding cell, had him complete another security request, and moved him to another cell.

When one inmate attacks another, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996). The

2

person to be held liable "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). General requests for help and expressions of fear are insufficient to alert guards to the need for action. <u>Klebanowski v. Sheahan</u>, 540 F.3d 633, 639–640 (7th Cir. 2008). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." <u>Gevas v. McLaughlin</u>, 798 F.3d 475, 481 (7th Cir. 2015). "Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." <u>Fisher v. Lovejoy</u>, 414 F.3d 659, 664 (7th Cir. 2005). Mr. Stokes hasn't identified a specific, credible, imminent risk of harm, and the complaint – albeit confusing – seems to indicate that he was ultimately placed in a cell alone where an unknown assailant attacked him. If the court understands the allegations correctly, reasonable steps were taken to ensure Mr. Stokes's safety. The complaint hasn't plausibly alleged facts from which it can be inferred that any defendant was deliberately indifferent to Mr. Stokes's safety before this attack.

On January 21, 2019, Officer Hart told one of Mr. Stokes's cellmates that Mr. Stokes had personally told her that contraband found in the cell was his. This resulted in a verbal and physical conflict between Mr. Stokes and the cellmate in the shower. It's not clear exactly what happened, but the cellmate

told Mr. Stokes not to do it again, Mr. Stokes agreed and left the shower. There is no indication that Mr. Stokes told any defendant named in this action that he believed he was in imminent risk of being harmed between Officer Hart's actions and the incident that occurred in the shower. Further, Mr. Stokes hasn't described the nature of any physical conflict. Mere fear of an attack that doesn't occur does not state a claim for monetary damages. *See* Doe v. Welborn, 110 F.3d 520, 523–524 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause."(internal quotation marks and citation omitted)). Mr. Stokes hasn't plausibly alleged facts from which it can be inferred that Officer Hart was deliberately indifferent to his safety before the incident in the shower.

At some point (the timeline is again unclear) Mr. Stokes confronted Officer Hart and asked why she would put Mr. Stokes in harm's way by lying and telling his cellmate that Mr. Stokes had implicated him. Officer Hart, whom Mr. Stokes believes was intoxicated, became angry and called Mr. Stokes a snitch. Mr. Stokes believed she told the cellmate that Mr. Stokes had implicated him in retaliation for earlier conflicts, although it's not clear what those conflicts were. "To prevail on his First Amendment retaliation claim, [Mr. Stokes] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d

4

859, 866 (7th Cir. 2012) (quotation marks and citations omitted). These allegations don't state a claim of retaliation against Officer Hart because they do not satisfy any of these requirements.

During Mr. Stokes's exchange with Officer Hart, Mr. Stokes threatened to write Officer Hart up. She told Mr. Stokes that nothing would be done about it if he did. It's not clear if Mr. Stokes filed a complaint about Officer Hart, but Mr. Stokes alleges that Officer Hart now harasses him daily. He provides very little information about the nature of the daily harassment he allegedly endures. He does provide the following example – she "clothes lined" him at the door, asking to see his identification, even though it was visible on his pocket. (ECF 1 at 3.) This isn't the kind of deprivation that would deter future First Amendment activity. Mr. Stokes hasn't stated a retaliation claim against Officer Hart based on these allegations either.

A wet ceiling caved in on Mr. Stokes. Before the ceiling fell, Mr. Stokes reported that it was wet to two officers. Mr. Stokes does not identify these officers by name. He was told that the ceiling was not a hazard. Before the ceiling collapsed, small pieces fell to the floor. Office Hart had Mr. Stokes sweep up these pieces. When the ceiling did fall, it hit Mr. Stokes in the head and he was injured. He had double vision, headaches, straining hernia, and blood in his stools. Mr. Stokes indicates that he didn't think he could submit a report of the incident or get any medical care because of his previous encounters with Officer Hart. Still, he eventually submitted an emergency medical request. It is unclear why he changed his mind about requesting help or how much time passed

5

between the incident and his request for medical care. Mr. Stokes claims he was moved due to the situation with Officer Hart, but the nature of that situation is unclear. Without more, these allegations don't support an inference that Officer Hart was deliberately indifferent to Mr. Stokes's safety or medical needs.

Mr. Stokes also claims he was wrongfully moved on February 15, 2019, although it isn't clear who was responsible for the move. He had just been moved three days earlier, and this time there was no cart available. Despite his injuries, he had to carry his things to his new cell. He felt that the move was unjust because he was in school and the area he was being moved to was for those that are idle or have disciplinary problems. Prison staff ultimately determined that he was right, and someone (maybe Sgt. Franklin, or maybe someone else) directed him to move yet again. He refused and was told that if he didn't move he would be handcuffed and dragged to his new cell or placed in lockup. So, he carried his things to a new cell yet again. After the move, Mr. Stokes had a headache, and he had blood in his stool again. It's unclear which defendant Mr. Stokes believes is responsible for him being wrongly moved or being required to carry items despite his injuries. It's also unclear if a medical provider ordered that Mr. Stokes limit his lifting, what his lifting restrictions were, or whether any defendant named in this lawsuit knew that his injuries kept him from lifting. These allegations don't state a claim for deliberate indifference against any defendant.

Mt. Stokes had a meeting with Head Supervisor Saddelberg after the attack in his cell. It is unclear when this meeting took place in relationship to the other events Mr. Stokes complains about. After the meeting, he was again called a

snitch by several inmates. Head Supervisor Saddelberg indicated he would remove Mr. Stokes from school and move him. Mr. Stokes asked that he instead simply be moved from the afternoon GED class to the morning GED class to reduce conflict. A couple weeks later, Mr. Stokes was moved to the morning GED class, as he requested. Head Supervisor Saddelberg is not a defendant here, and even if he were, these allegations don't demonstrate deliberate indifference to Mr. Stokes's suffering.

The last week in January of 2019 was brutally cold in Indiana. Mr. Stokes was told that the heating system had only two working coils. His cell was very cold, and, while staff members were checking the temperature of the cells, they measured the temperature only near the floor where the heating pipes are located. Mr. Stokes says he would wake up with numb limbs because of the cold, go to the bathroom, and sit in the shower where the heat worked better. On January 29, 2019, Sgt. Flairalty found him there and told him that he was had to stay in his rack after lights out. Mr. Stokes explained that he was filling out a request for blankets because he was so cold. She said that there were no exceptions and sent him back to his bunk. These allegations don't support an inference that Sgt. Flairalty was deliberately indifferent to Mr. Stokes's serious medical needs.

At some point, Mr. Stokes filed an informal grievance about something (it is unclear what the grievance was about or when it was filed). Mr. Stokes later asked Sgt. Franklin to check the temperature in his cell. She "went off" on Mr. Stokes and put him in a hold. Mr. Stokes told her he had already written her up

7

"for the same well being and life or death M.O. she was using again." (ECF 1 at 8.) She became angrier, and she said she was going to write Mr. Stokes up. He countered by telling Sgt. Franklin that a write up would be retaliation. It isn't clear whether Mr. Stokes was written up, but at some point in the grievance process, Mr. Stokes provided Sgt. Franklin with evidence of how he suffered due to her actions. Rather than responding with remorse for his suffering, she responded by calling him a liar. But Mr. Stokes has no constitutional right to access the grievance process, much less a satisfactory outcome. *See* Grieveson v. Anderson, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure).

On February 1, 2019, signs were posted indicated that inmates could only take showers between six and nine p.m. Three days later, inmates were told that the water had been shut off and they could not use water to wash their hands or flush the toilets until further notice because a large amount of snow was melting and filling the sewer drains and causing sewage backups. Mr. Stokes doesn't say how long these limitations were in effect. He also does not indicate that any of the defendants he named in his complaint were responsible for causing the situation or implementing the policy. Accordingly, this does not state a claim on which relief can be granted.

Mr. Stokes claims that he has had difficulty getting appointments to the law library. To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color

8

of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, <u>Nance v. Vieregge</u>, 147 F.3d 591, 590 (7th Cir. 1998), and that actual harm resulted. <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. <u>Marshall v. Knight</u>, 445 F.3d 965, 968 (7th Cir. 2006). Mr. Stokes hasn't adequately alleged that he was denied access to the courts. While Mr. Stokes views the restrictions on his law library access as a form of retaliation, he doesn't indicate which of the defendants here is responsible for his difficulty accessing the law library. Furthermore, this is not the type of deprivation that would likely deter First Amendment activity in the future. Accordingly, Mr. Stokes hasn't stated a claim based on denial of access to the courts or retaliation by depriving him of law library access.

Mr. Stokes also includes allegations about his teacher, Mr. Edialberg. Mr. Edialberg hasn't been named as a defendant here, so the allegations about him won't be addressed further.

Lastly, to the extent that Mr. Stokes is seeking his immediately release from custody, that isn't relief that is available to him in an action brought under 42 U.S.C. 1983. *See* <u>Heck v. Humphrey</u>, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . ..").

While the complaint doesn't state a claim on which relief can be granted, the court will give Mr. Stokes a chance to try again. Luevano v. WalMart Stores, Inc., 722 F.3d 1014, 1022-23, 1025 (7th Cir. 2013); Loubser v. Thacker, 440 F.3d 439, 443 (7th Cir. 2006). In the amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing as much detail as possible. His current complaint names both a Ms. Hart and a Mr. Hart as defendants, but the body of his complaint appears to refer to only one defendant Hart – referred to in the body of the complaint as Officer Hart or C.O. Heart. If Mr. Stokes amends his complaint, he should be careful to be clear about which defendant he is referring to each time he mentions that defendant in the amended complaint.

For these reasons, the court:

(1) DIRECTS the clerk to place this cause number on a blank Prisoner Complaint (INND Rev. 8/16) and send it to Samuel Walter Stokes;

(2) GRANTS Samuel Walter Stokes until **May 13, 2018**, to file an amended complaint on that form.

If Mr. Stokes doesn't respond by that deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim.

SO ORDERED on April 12, 2019

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT