UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| SAMUEL WALTER STOKES, | |
|---|---|
| Plaintiff, | |
| v. | CAUSE NO.: 3:19-CV-157-RLM-MGG |
| FLAIRALTY, et al., | |
| Defendants. | |

OPINION AND ORDER

Samuel Walter Stokes, a prisoner without a lawyer housed at the Westville Correctional Facility, sues Sgt. Flaraity, Ms. C.O. Hart, Supervisor Sandleberg, Lt. Palmmaroy, Sgt. Franklin, and Amber Vitkoc. A court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Stokes's allegations are, in large part, identical to those of the amended complaint.[1] Mr. Stokes alleges that he was having trouble getting along with his

---

[1] Mr. Stokes has re-filed eight pages of the amended complaint as a portion of the body of this complaint.

cell mates but Lt. Pallmaroy, Supervisor Sandleberg, and Caseworker Vitkoc refused to move or otherwise help him. Eventually, he was "put out" of his cell by a cell-mate. (ECF 32 at 5.) Mr. Stokes told Sgt. Franklin and Sgt. Flaraity what happened, but they still wouldn't move him. Furthermore, they made him tell his side of the story in front of other offenders. He sought protective custody, but an unknown lieutenant denied his request. Mr. Stokes refused to return to his cell after the denial, and instead stayed in an empty cell. That night, he was attacked. He received medical care and was moved. His assailant was identified, but Supervisor Sandleberg and Lt. Pallmaroy, in an effort to cover up the incident, would not punish the individual responsible for the assault. Shortly thereafter, a room full of roughly 100 offenders called Mr. Stokes a snitch and threatened him. Mr. Stokes was moved again.

When one inmate attacks another, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). General requests for help and expressions of fear are insufficient to alert guards to the need for action. Klebanowski v. Sheahan, 540 F.3d 633, 639–640 (7th Cir. 2008). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of

2

the risk." Gevas v. McLaughlin, 798 F.3d 475, 481 (7th Cir. 2015). "Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." Fisher v. Lovejoy, 414 F.3d 659, 664 (7th Cir. 2005). Despite two opportunities to clarify his complaint, Mr. Stokes hasn't identified a specific, credible, imminent risk of harm that was communicated to any of the defendants before the attack. The complaint hasn't plausibly alleged facts from which it can be inferred that any defendant was deliberately indifferent to Mr. Stokes' safety before this attack.

Mr. Stokes had trouble with Officer Hart after he was moved. According to Mr. Stokes, Officer Hart told an inmate that Mr. Stokes had snitched on him, leading to a verbal confrontation with the inmate in the shower. When Mr. Stokes confronted Officer Hart, she called Mr. Stokes a snitch in front of other inmates. Mere fear of an attack that doesn't occur does not state a claim for monetary damages. *See* Doe v. Welborn, 110 F.3d 520, 523–524 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause."(internal quotation marks and citation omitted)). Mr. Stokes hasn't stated a claim on which relief can be granted against Officer Hart for deliberately indifferent to his safety based on the verbal confrontation that occurred in the shower.

Mr. Stokes then filed a grievance against Officer Hart. Mr. Stokes asserts that Officer Hart retaliated against him by abruptly stopping him with her arm

3

and demanding to see his identification even though it was plainly visible. "To prevail on his First Amendment retaliation claim, [Mr. Stokes] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). These allegations don't state a claim of retaliation against Officer Hart because this isn't the kind of deprivation that would deter future First Amendment activity.

Mr. Stokes sought protective custody again and was moved, but he still saw Officer Hart every day. Mr. Stokes believes that Officer Hart had another officer write him up for taking too long to pick up his legal mail, in retaliation for filing grievance against her. Giving Mr. Stokes the inferences to which he is entitled at this stage of the case, he has sufficiently alleged that Officer Hart retaliated against him for filing a grievance by directing another officer to file a disciplinary complaint against him.

Mr. Stokes also alleges that Sgt. Hart and Sgt. Flaraity made him clean black mold off the ceiling as a means of retaliating against him, but it's unclear when this occurred in relationship to the other events set forth in the complaint, and Mr. Stokes hasn't alleged that he was required to clean up black mold because he exercised his rights under the First Amendment. Nor is this the kind of deprivation that would deter future First Amendment activity. Mr. Stokes won't be permitted to proceed on this claim.

To the extent that Mr. Stokes' second amended complaint seeks his immediately release from prison, it has already been explained to Mr. Stokes that relief is not available to him in an action brought pursuant to 42 U.S.C. 1983. *See* Heck v. Humphrey, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . ."). He now seeks what he describes as a lateral transfer. "Prison officials have broad administrative and discretionary authority over the institutions they manage." Westefer v. Neal, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Prison officials must afford inmates their constitutional rights, but where to house an inmate is just the type of decision that is squarely within the discretion of prison officials. The facts presented here don't warrant an intrusion upon that discretion.

Lastly, Mr. Stokes has asked that all fees related to this lawsuit be waived or at least suspended until after his release. Because Mr. Stokes is a prisoner, he is subject to the requirements of 28 U.S.C. § 1915(b) and must pay the entire filing fee in accordance with the procedures set forth in that statute. *See* 28 U.S.C. § 1915(b); Hains v. Washington, 131 F.3d 1248, 1250 (7th Cir. 1997) ("[T]he filing of a complaint (or appeal) is the act that creates the obligation to pay fees, and what the judge does later does not relieve a litigant of this responsibility."). A court doesn't have authority to waive the fee or to modify the amount or timing of payments. Lucien v. DeTella, 141 F.3d 773, 776 (7th Cir. 1998)*; see also* Newlin v. Helman, 123 F.3d 429, 436 (7th Cir. 1997). As to other expenses related to litigating this case, Mr. Stokes isn't entitled to public subsidy

5

of the costs of litigating this case, even though he is proceeding *in forma pauperis*. *See* Lindell v. McCallum, 352 F.3d 1107, 1111 (7th Cir. 2003) (indigent *pro se* prisoner had no "constitutional entitlement to subsidy. . . to prosecute a civil suit"); Lucien v. DeTella, 141 F.3d at 774 ("All § 1915 has ever done is excuse *pre*-payment of the docket fees; a litigant remains liable for them, and for other costs") (emphasis in original).

For these reasons, the court:

(1) GRANTS Samuel Walter Stokes leave to proceed against Ms. C.O. Hart in her individual capacity for compensatory and punitive damages for retaliating against him by directing another officer to file a disciplinary complaint against him, in violation of the First Amendment;

(2) DISMISSES all other claims**;**

(3) DISMISSES Sgt. Flaraity, Supervisor Sandleberg, Lt. Palmmaroy, Sgt. Franklin, and Amber Vitkoc from this case;

(4) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Ms. C.O. Hart with a copy of this order and the second amended complaint (ECF 32) as required by 28 U.S.C. § 1915(d) at the Indiana Department of Corrections; and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Ms. C.O. Hart to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 8, 2019

                                                                      s/ Robert L. Miller, Jr.
                                                                      JUDGE
                                                                      UNITED STATES DISTRICT COURT